UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LISA HAWLEY VELASQUEZ,          :
                                :
        Plaintiff,              :
                                :
V.                              :   CASE NO. 3:08-CV-1427(RNC)
                                :
NATALINO MOTORS, LLC, ET AL.,   :
                                :
        Defendants.             :

<u>RULING AND ORDER</u>

This action arises from plaintiff's purchase of a used car. To finance the purchase, plaintiff entered into a retail installment contract with the seller, defendant Colonial Auto Exchange, Inc. (Colonial), an affiliate of Natalino Motors LLC (Natalino Motors). The contract was assigned to defendant Industrial Acceptance Corporation (IAC). Plaintiff seeks damages for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601*, et* <u>seq</u>., the Retail Installment Sales Financing Act, Conn. Gen. Stat. §§ 36a-770, <u>et</u> <u>seq</u>. ("RISFA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, <u>et</u> <u>seq</u>. ("CUTPA").[1] A bench trial has been held. I find in favor of the plaintiff in part and conclude that she is entitled to recover statutory damages of $1,000, for which Colonial and IAC are jointly liable. The action against Natalino Motors is dismissed.

_____

[1] The second amended complaint also includes claims for breach of warranty under federal and state law, but plaintiff has withdrawn any claims relating to the condition of the car. <u>See</u> Pl.'s Reply to Def.'s Post-Trial Mem.  Doc 93, ¶6.

I.  Findings of Fact

     Plaintiff is a Connecticut resident.  Colonial is a
Connecticut corporation located in East Haven.  At
all times relevant to this case, Colonial was a car dealership
managed by Michael Natalino.  Natalino Motors is a Connecticut
corporation also located in East Haven.  At all times relevant to
this case, Mr. Natalino was the managing member of Natalino
Motors.  IAC is a Connecticut corporation engaged in the business
of buying retail installment contracts.

     On November 8, 2007, plaintiff went to Colonial to buy a
used car.  She needed a car because her 1994 Ford Pinto was on
its last legs.  She decided to buy a 2000 Ford Focus.  The cash
price was $5,700.  Colonial required a down payment of $1,400.
Plaintiff paid a deposit of $1,000 and received a receipt.

     Plaintiff left the Pinto at Colonial.  She wanted to use the
Pinto as a trade-in to satisfy the $400 balance remaining on the
down payment.  Colonial subsequently declined to accept the Pinto
as a trade-in because it was inoperable.

     On or before November 13, 2007, Colonial prepared a purchase
order using a computerized form.  Due to an equipment malfunction
or operator error, some of the information does not appear in the
intended place on the printed form.  Instead, entries are printed
one line too high.  For example, the space on the form for
entering the purchaser's name is filled in, not with the

plaintiff's name, but rather with her address.  When the
misalignment is taken into account, the purchase order shows a
cash price of $5,700 for the car, a sales tax of $353, a dealer
processing fee of $195, a total cash price of $6,248, a deposit
of $1,000, a payment of $400 in cash on delivery, a $150 charge
for "Vendors Single Interest," and an unpaid balance amount of
$4,998.70.  "Vendors Single Interest" refers to single interest
insurance, which a creditor can require a borrower to obtain in
connection with the financing of a purchase of property.[2]

The purchase order shows that the unpaid balance of
$4,998.70 was to be financed over a two year period at an annual
interest rate of 18.99%, resulting in a finance charge of
$1,048.10.  The purchase order also shows that plaintiff would be
making monthly payments of $251.95, totaling $6,046.80, and that
the total cost of the purchase on credit would be $7,446.80.

Colonial also prepared a retail installment contract using a
computerized form.  The contract contains five Truth-In-Lending
boxes.  These boxes display the same figures set forth in the
purchase order: an annual percentage rate of 18.99%, a finance
charge of $1,048.10, an amount financed of $4,998.70, total
payments of $6,046.80, and a total cost of the purchase on credit

---

[2]  "Single interest insurance for automobiles provides
protection to a creditor if a debtor fails to secure insurance on
his or her own."  <u>Hicks v. Star Imports, Inc.</u>, 5 Fed. Appx. 222,
224 (4th Cir. 2001).

of $7,446.80.

The retail installment contract includes a section entitled "Itemization of the Amount Financed."  In part E of this section, entitled "Other Charges," a charge of $150 is shown with no description of the purpose of the charge.  The evidence supports a finding that this $150 charge represented a charge for vendor's single interest insurance.[3]

After the purchase order and the installment contract were prepared by Colonial to include the numbers set forth above, the documents were shown to the plaintiff by Michael Natalino, acting in his capacity as manager of Colonial.  Based on his testimony, I find that it was his usual practice to review the numbers in the purchase order and installment contract with the customer when finalizing a sale.  I also find that he followed his usual practice in this instance.

After the documents were reviewed, they were signed by the plaintiff.  There is no claim, nor any evidence, that the plaintiff did not read the documents before signing them.  The documents were also signed by Mr. Natalino in his capacity as manager of Colonial.

The documents include an acknowledgment by the plaintiff

---

[3]  By looking at the purchase order, one can ascertain that the $150 charge represents the cost of single interest insurance, although this requires the reader to correct for the misalignment of the numbers on the form.

that she read them and received a copy.  She testified, however, that she did not receive a copy of either document from Colonial at any time and eventually got copies of the documents from IAC. Mr. Natalino testified that Colonial had a practice of giving its customers copies of documents they signed.  After considering all the evidence, I find that plaintiff has failed to sustain her burden of proving that she did not get copies of the purchase order and retail installment contract from Colonial.

It is undisputed that plaintiff paid Colonial an additional $500 in cash and received a receipt for this amount dated November 20, 2007.  The nature of the additional payment is disputed.  Plaintiff claims that the $500 was a finance charge imposed by Colonial.  Mr. Natalino testified that the $500 payment represented the balance of $400 due on the down payment of $1,400, plus a $100 charge for disposing of the Pinto.  After considering the conflicting testimony of the witnesses in light of the documentary evidence and the totality of the circumstances disclosed by the record, I find that the plaintiff has failed to sustain her burden of proof on this issue as well.

It is undisputed that the retail installment contract was assigned to IAC.  It is unclear when IAC received the contract. Robert LoRicco, IAC's finance manager, testified that he "couldn't stipulate as to the exact date, but it had to be after the date it was signed."  Tr. 112.  IAC reviewed the contract for

compliance with TILA.[4]   Following this review, IAC changed the
due date of the plaintiff's first payment from December 13, 2007,
to December 25, 2007.  The change appears to have been made on
November 21, 2007.  IAC changed the due date because it wanted
the plaintiff to have at least 30 days to make her first monthly
payment after she received her first bill.

The evidence does not permit a finding as to exactly when
plaintiff took possession of the car.  The date she took
possession could have been November 20, 2007, as alleged in the
second amended complaint, or November 23, 2007, as she testified
at trial.[5]  In the absence of a better record, I am unable to make
a finding as to the date she took possession.  I do find,
however, that it was on or after November 20, 2007.

After the plaintiff took possession of the car, she found
that it had certain mechanical problems.  No findings are
necessary regarding the condition of the car because, as noted
above, any claims relating to the condition of the car have been
withdrawn.

II.  Conclusions of Law

A.  Claims Against Natalino Motors

Natalino Motors contends that it should be dismissed as a

---

[4]  When asked at trial whether the contract complied with
TILA, Mr. LoRicco credibly testified that he believed it did.

[5]  The original and amended complaints alleged that the
plaintiff took possession on November 13, 2007.

party because it had no involvement in the transaction between
the plaintiff and Colonial.  Plaintiff responds that Natalino
Motors admitted its involvement in the transaction when it
answered the amended complaint.  But the answer contains no
clear admission.  <u>See</u> Def.'s Answer, Doc. 30, ¶¶ 5, 10, 15, 18.
Moreover, Natalino Motors' alleged involvement was a contested
issue at the summary judgment stage of this case.  Magistrate
Judge Martinez addressed the issue in her recommended ruling:

> The plaintiff maintains that defendants Colonial and
> Natalino [Motors] are both liable because they were
> referred to interchangeably during the sale.  From
> that, the plaintiff infers that Natalino [Motors] was
> involved in the transaction, although only Colonial is
> mentioned in the documentation of the sale.  The
> defendants present affidavit evidence that Natalino
> [Motors] was not involved in the sale.  This dispute as
> to whether Natalino [Motors] had any involvement at all
> in the sale precludes the court from granting the
> plaintiff summary judgment on any grounds against this
> defendant.

Recommended Ruling, Doc. 71, at 5.  In view of this ruling, which
was approved and adopted, the plaintiff knew or should have known
that she could not rest on the pleadings with regard to the
alleged involvement of Natalino Motors and that it would be
necessary for the plaintiff to present evidence at trial to
support a verdict against this defendant.  In the absence of such
evidence, I conclude that the claims against Natalino Motors must
be dismissed.

B.  <u>Claims Against Colonial</u>

1.  <u>TILA</u>

Congress enacted TILA to require "meaningful disclosure of credit terms" and allow consumers to make informed decisions regarding credit transactions.  Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 235 (2004) (quoting 15 U.S.C. § 1601(a)). For vehicle financing transactions, "TILA requires the disclosure of both the price and the finance charges."  Poulin v. Balise Auto Sales, No. 3:08-cv-01618 (CSH), 2010 U.S. Dist. LEXIS 33456, at *12 (D. Conn. Apr. 5, 2010), aff'd, 647 F.3d 36 (2d Cir. 2011).  As a remedial statute, TILA is construed liberally in favor of the consumer.  Schnall v. Marine Midland Bank, 225 F.3d 263, 267 (2d Cir. 2000).

Plaintiff claims that Colonial violated TILA because it failed to give her a copy of the purchase order or contract prior to consummation of the sale and required her to pay an undisclosed finance charge of $500.  These claims are unavailing because plaintiff has failed to prove the predicate facts.  The record does not establish by a preponderance that Colonial failed to give her the documents.  Nor does it establish by a preponderance that the $500 was a finance charge.

Plaintiff claims that the defendants also violated TILA with regard to the charge for single interest insurance.  TILA requires creditors to list single interest insurance as an element of the "finance charge," rather than part of the "amount financed," unless (1) the creditor provides a "clear and specific

8

statement in writing . . . to the person to whom credit is
extended," (2) "setting forth the cost of the insurance if
obtained from or through the creditor," and (3) "stating that the
person to whom the credit is extended may choose the person
through which the insurance is to be obtained."  15 U.S.C. §
1605(c).  Under Regulation Z implementing TILA, a charge for
insurance can be excluded from the finance charge if "[t]he
insurance coverage may be obtained from a person of the
consumer's choice, and this fact is disclosed."  12 C.F.R. §
226.4(d)(2)(i) (2010) (footnote omitted).  Plaintiff contends
that because the retail installment contract failed to clearly
disclose the nature of the $150 charge, and also failed to
disclose the plaintiff's right to choose the insurance provider,
the requirements for excluding the $150 charge from the finance
charge were not met.
I agree.

     Colonial objects to this claim, and asks the Court to
decline to consider it, because the claim was not disclosed prior
to trial.  There is justification for Colonial's position.
Single interest insurance is not mentioned in the complaint,
amended complaint, or second amended complaint, and plaintiff
moved for summary judgment without ever mentioning it.  Because
plaintiff never referred to single interest insurance at any time
prior to trial, even when she moved for summary judgment,

Colonial might well have assumed that plaintiff was not making and would not make a claim relating to single interest insurance. Plaintiff's counsel responds that he had no way of knowing the $150 charge represented a premium for single interest insurance until the defendants testified at trial. But if counsel was unable to discern the nature of the charge from the documents themselves, it would have been easy to submit an interrogatory to the defendants during the discovery period and thereby obtain the information in a timely manner.[6]

Colonial's position is unavailing, however. To preclude plaintiff's claim, Colonial must show that the plaintiff acted in bad faith or that resolving the claim on the merits would be unduly prejudicial. See Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). Colonial has not alleged bad faith or prejudice. Moreover, Colonial should have realized prior to trial that it could be held liable under TILA because the exception permitting single interest insurance to be listed as part of the "amount financed" was not met. The TILA violation is apparent on the face of the retail installment contract.

Plaintiff has not proven that she is entitled to actual damages. Nor am I persuaded that she should recover punitive damages. However, she is entitled to statutory damages for the

---

[6] Even without discovery, the nature of the $150 charge can be ascertained by looking at the purchase order and correcting for the misalignment.

violation of TILA relating to single interest insurance.
Statutory damages are twice the amount of the finance charge, not
to exceed $1,000.  15 U.S.C. § 1640(a)(2)(A)(i).  Here, twice the
amount of the finance charge would exceed $1,000.  Plaintiff is
therefore entitled to $1,000 in statutory damages.

2.  <u>RISFA</u>

     In count three of the amended complaint, plaintiff contends
that defendants violated RISFA, which imposes a maximum finance
charge in connection with the sale of a motor vehicle.  Conn.
Gen. Stat. §36a.  For a used car over two years old, the maximum
annual rate is 19%.  Conn. Gen. Stat. § 36a-772(a)(3)(C).
Plaintiff contends that the interest rate in this instance
exceeded 19%.  The improper characterization of the $150 charge
for single interest insurance as part of the amount financed,
rather than part of the finance charge, did have the effect of
lowering the annual percentage rate.  Thus, Colonial has also
violated RISFA.  <u>See</u> Conn. Gen. Stat. § 36a-771; <u>see also</u> <u>Tirado</u>
<u>v. Ofstein</u>, No. HHDCV054014648S, 2008 WL 902506, at *13 (Conn.
Super. Ct. March 14, 2008).

3.  <u>CUTPA</u>

     In count five of the amended complaint, plaintiff alleges
that the defendants have violated CUTPA.  TILA violations are
unfair trade practices in violation of CUTPA.  <u>See</u> <u>Tirado</u>, 2008
WL 902506, at *15.  Accordingly, I conclude that Colonial has

violated CUTPA with regard to the charge for single interest insurance.

C.  Claims against IAC

Count six of the amended complaint alleges that under the terms of the retail installment contract, IAC is liable for Colonial's alleged violations.  As an assignee of the creditor, IAC may be held liable if the violation is apparent on the face of the disclosure statement.  15 U.S.C. § 1641(a).  Here, the TILA violation is apparent on the face of the retail installment contract.  Thus, IAC is jointly liable with Colonial for statutory damages in the total amount of $1,000.

III.  Conclusion

For the foregoing reasons, plaintiff is entitled to recover statutory damages of $1,000.  Colonial and IAC are jointly liable for this amount.  Plaintiff is also entitled to recover a reasonable attorney's fee.  Plaintiff will submit a fee application on or before November 1, 2011.  Opposition papers will be due 21 days after the fee application is filed.  The action is dismissed with regard to Natalino Motors.

So ordered this 30th day of September 2011.

/s/ RNC
Robert N. Chatigny
United States District Judge

12